UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| D.W.,<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS INC., DAYS INN WORLDWIDE INC., MITCH & MURRAY HOTELS, INC. D/B/A DAYS INN NORTH TAMPA, and STICKBAY, INC.,<br><br>Defendants. | Case No. 8:25-cv-02642-JLB-SPF |

**PLAINTIFF D.W.'S RESPONSE IN OPPOSITION TO DEFENDANT MITCH & MURRAY HOTELS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (DOC. 72)**

Plaintiff D.W. responds in opposition to the Motion to Dismiss Second Amended Complaint (Doc. 72) (the "Motion") filed by Defendant Mitch & Murray Hotels, Inc. d/b/a Days Inn North Tampa ("MMH"), and states as follows.

## I. INTRODUCTION

D.W. was a child when she was trafficked for sex at the Days Inn North Tampa. (Doc. 57 ("SAC") ¶¶ 8, 26–28.) MMH owned and ran that hotel as the franchisee. It controlled check-in and identification procedures, room assignments, payment acceptance, housekeeping, and security, and it employed the front-desk and housekeeping staff who dealt with D.W. and her traffickers, which includes her buyers.

(*Id.* ¶¶ 19–20, 90–91.) The SAC alleges that MMH's staff checked an obviously underage girl into the hotel without checking her identification, renewed her traffickers' room day after day for cash at inflated "walk-up" rates charged for renting without identification or registration information, and were paid, befriended, or otherwise compensated to act as lookouts against police. (*Id.* ¶¶ 30–31, 67, 73, 92–93.) That is not an ordinary room rental.

As shown below, the SAC is not a shotgun pleading; Count I states a beneficiary claim under 18 U.S.C. § 1595(a); Count II states a claim under 18 U.S.C. § 2255, which does not limit a child victim's claim to the perpetrator; Count III is not time-barred on the face of the SAC; and Count III states a negligence claim under settled Florida law.

## II. BACKGROUND

D.W. was born in 1999 and was trafficked at the Days Inn North Tampa, 701 E. Fletcher Avenue, "through and inclusive of 2015," while she was a minor. (SAC ¶¶ 8, 11, 26–27.) During that time, she "was forced to perform sexual acts on numerous adult individuals." (*Id.* ¶ 28.) MMH was the franchisee that "owned and operated" the hotel and controlled its day-to-day operations, including check-in, identification procedures, payment, housekeeping, and security. (*Id.* ¶¶ 18–20, 90.) MMH "employed, hired, trained, supervised, and paid the front desk, housekeeping, maintenance, and management staff," and "its employees interacted directly with Plaintiff, her traffickers, and her sex buyers." (*Id.* ¶ 91.)

D.W. had "numerous interactions with hotel staff," who checked her in without checking her identification although "it would have been obvious that she was a

minor." (*Id.* ¶¶ 29–31.) MMH renewed the traffickers' room daily, for cash, at "inflated walk-up and cash-payer rates" charged for renting without identification or registration information. (*Id.* ¶¶ 73, 92(b)–(d).) Buyers paid, befriended, or compensated hotel staff "to act as lookout(s)/informant(s) for sex buyers." (*Id.* ¶ 67.)

MMH's staff saw heavy foot traffic of buyers to D.W.'s room, her repeated requests for towels, and condoms and drug paraphernalia in the room. (*Id.* ¶¶ 32–34, 79, 93.) MMH kept renting to them. (*Id.* ¶¶ 81, 83, 92.)

D.W. sued on September 29, 2025 (Doc. 1) and added MMH in February 2026 (Doc. 25). The SAC, filed August 31, 2026, added Stickbay, Inc. and allegations directed to each hotel operator. (SAC ¶¶ 21–23, 86–93.) The Court has not ruled on the merits of any of her pleadings.

## III. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard "is not akin to a 'probability requirement.'" *Id.* Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). A statute-of-limitations defense supports dismissal "only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

# IV. ARGUMENT

## A. The SAC Is Not a Shotgun Pleading.

MMH argues that the SAC is a shotgun pleading because it attributes conduct to "Defendants" collectively, because Counts I and II lack incorporation paragraphs while Count III incorporates everything before it, and because Count III combines negligence, gross negligence, and recklessness. (Doc. 72 at 5–7.) It asks for dismissal with prejudice. (*Id.* at 7.) Each argument fails. The SAC pleads facts specific to MMH, its structure gives MMH fair notice of the grounds for each count, and in any event the remedy for a pleading defect would be repleading, not dismissal with prejudice.

The "unifying characteristic" of shotgun pleadings is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Allegations directed to all "Defendants" are proper where "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Courts in this District have rejected MMH's exact argument in hotel trafficking cases. *Jane Doe (K.R.) v. Choice Hotels Int'l, Inc.*, No. 6:23-cv-1012-JSS-LHP, Doc. 68 at 31–32 (M.D. Fla. June 12, 2024); *S.Y. v. Wyndham Hotels & Resorts, Inc.*, No. 2:20-cv-619-JES-MRM, 2021 U.S. Dist. LEXIS 86849, at *5 (M.D. Fla. May 6, 2021). In any event, the SAC pleads MMH's role, control, employees, benefits, and knowledge specifically (SAC ¶¶ 18–20, 90–93), and

its parallel allegations against Stickbay reflect that the two jointly operated the hotel (*id.* ¶¶ 21–23, 86–89).

MMH argues Counts I and II are deficient for failing to contain an incorporation paragraph, then argues Count III is a shotgun pleading because it contains one. The Complaint should be read as a whole with regard to every Count, and, at worst, these are technical defects which could be fixed with amendment.

Counts I and II rest on the SAC's factual allegations, and Count I itself contains the supporting facts, including the MMH-specific allegations (¶¶ 61–93). Count III's incorporation paragraph (¶ 98) is not fatal either. In *Weiland*, the Eleventh Circuit reversed the shotgun-pleading dismissal of counts that each re-alleged the complaint's first forty-nine paragraphs because "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." 792 F.3d at 1324. The same is true here: Count III is the final count, and it rests on the same facts as Count I. *See K.R.*, Doc. 68 at 32 (rejecting the same incorporation argument).

Pleading negligence together with the heightened degrees of culpability that support punitive damages (gross negligence and recklessness) states one claim for relief, not three. The Federal Rules expressly allow alternative theories "either in a single count … or in separate ones." Fed. R. Civ. P. 8(d)(2).

Even if the Court found a pleading defect, dismissal with prejudice would be unwarranted. Before dismissing with prejudice on non-merits shotgun grounds, a district court must give a represented plaintiff "one chance to replead" with an order

explaining the defect. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295–96 (11th Cir. 2018). No such order has been entered here. *Jackson v. Bank of America, N.A.* is not to the contrary; counsel there, were ordered to replead and "brazenly fil[ed] a facsimile of his initial pleading." 898 F.3d 1348, 1358–60 (11th Cir. 2018).

### B. Count I States a Beneficiary Claim Under § 1595.

MMH argues that Count I fails because the SAC alleges only that the hotel rented rooms, collected revenue, and observed signs of trafficking, which MMH says can establish neither participation in a venture nor the required knowledge. (Doc. 72 at 7–10.) MMH is wrong. The SAC alleges conduct by MMH and its employees that goes beyond an arm's-length rental, and it alleges facts that MMH knew or should have known that a child was being trafficked in its hotel.

A plaintiff states a § 1595(a) beneficiary claim by alleging that the defendant "knowingly benefit[ed] . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" 18 U.S.C. § 1591. 18 U.S.C. § 1595(a). MMH does not dispute that it knowingly benefited from renting rooms to D.W.'s trafficker (SAC ¶¶ 61, 92), or that D.W., a minor caused to engage in commercial sex acts, was the victim of a TVPRA violation (*id.* ¶¶ 26–28). *See* 18 U.S.C. § 1591(a).

#### *1. MMH participated in a venture by providing "something more" than an arm's-length rental.*

MMH contends that, under *Red Roof*, *Riti*, and *Northbrook*, renting rooms to a trafficker with knowledge of trafficking is not participation, and that the SAC's

allegation that staff acted as lookouts (¶ 67) is conclusory. (Doc. 72 at 8–9.) But *Northbrook* also identifies the kind of conduct that does constitute participation, and the SAC alleges that conduct: admitting an obviously underage girl without identification, renewing the traffickers' room daily for cash at a premium charged for anonymity, and acting as lookouts against police.

Participation in a venture means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). *A.G. v. Northbrook* holds that "[m]erely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture'"; "something more than engaging in an ordinary buyer-seller transaction is required." 171 F.4th 1257, 1269 (11th Cir. 2026) (internal quotation marks omitted). That inquiry is "fact-specific," and "'something more' may include offering 'personalized support' to a sex trafficker." *Id.* (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 563 (7th Cir. 2023)). The court then gave "examples of facts which satisfy the 'participation in a venture' requirement." *Id.*

Those examples are the very facts MMH recites (Doc. 72 at 8–9), and in each the hotel operator *lost*. Reviewing a summary-judgment record, the court held that a jury could find participation where the evidence showed that traffickers "would spend 15-20 minutes talking with hotel staff per day" and the operator "allowed A.G. and G.W., two seventeen-year-old girls … back into a room even though they produced no identification and were not listed on the room reservation." *Id.* at 1271. It also held that an operator's room-placement and no-cleaning accommodations for a particular

trafficker were "something more." *Id.* at 1272. And, acknowledging that the plaintiffs' evidence was "not overwhelming," the court explained: "It does not need to be, and in cases where minor sex trafficking victims assert beneficiary claims we assume it rarely is." *Id.* at 1271–72. If those facts reach a jury after discovery, comparable allegations state a claim at the pleading stage.

The SAC alleges comparable conduct by MMH. Like the operators[1] in *Northbrook*, MMH's staff checked a minor into the hotel without checking her identification, although her minority "would have been obvious." (SAC ¶¶ 30–31, 93.) Like the *Northbrook* staff who talked with traffickers daily, MMH dealt with the traffickers every day, renewing D.W.'s room rental daily, often for cash. (*Id.* ¶¶ 73, 91, 92(b).) And it charged "inflated walk-up and cash-payer rates" for renting without identification or registration information. (*Id.* ¶ 92(c).) A premium charged for anonymity is not an ordinary buyer-seller transaction. It is a shared stake in the venture's need to avoid detection, which is the "risk and potential profit" *Red Roof* describes. 21 F.4th at 725. And MMH's employees, acting within the scope of their employment, were paid, befriended, or otherwise compensated by the venture's buyers to act as lookouts and informants about police activity. (SAC ¶¶ 67, 91.) That is "personalized support" of the most direct kind. *Northbrook*, 171 F.4th at 1269.[2]

---

[1] *Northbrook* was a consolidated appeal of multiple cases. 171 F. 4th at 1262. The Eleventh Circuit was looking at facts relating to multiple operators of different hotels.

[2] A buyer of commercial sex "patronizes" or "solicits" a minor in violation of 18 U.S.C. § 1591(a)(1), and is, himself, a sex trafficker and participant in the venture. 18 U.S.C. § 1591.

*Red Roof* addressed claims against franchisors that sent inspectors and read online reviews, holding that "observing something is not the same as participating in it." 21 F.4th at 727. And the court agreed that allegations that a trafficker "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit," "would establish a hotel operator's participation in a venture with a sex trafficker." *Id.* at 725–26 (first quote quoting *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017)). *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), is unpublished and therefore not binding, 11th Cir. R. 36-2, and it predates *Northbrook*. In any event, *Riti* explained that the operator-level allegations in *Red Roof* went beyond rentals because "hotel employees worked directly with traffickers by providing lookouts in exchange for cash or drugs," and it observed that the plaintiff in *Riti* "ha[d] not alleged such involvement between hotel employees and traffickers." *Id.* at *4 n.6 (citing *Red Roof*, 21 F.4th at 720). D.W. has alleged comparable involvement: MMH's employees were paid, befriended, or otherwise compensated to act as lookouts against police. (SAC ¶¶ 67, 91.) Naming the employees and dates is not required, *Twombly*, 550 U.S. at 570; those details are in MMH's records.

Courts in this District have denied motions by hotel operators on similar allegations. *Jane Doe (B.C.) v. Mayuri Inn, Inc.*, No. 8:26-cv-586-JSM-CPT, Doc. 106 at 8–10 (M.D. Fla. Sept. 17, 2026) (after *Northbrook*, plaintiff "allege[d] facts beyond observation," so "the 'something more' is present here"); *K.R.*, Doc. 68 at 21 (operator's staff accepted cash and did not require identification). MMH's district

court cases are not to the contrary. *Cavalier* never reached the merits. *A.D. v. Cavalier Mergersub LP*, Case No. 2:22-cv-649-JES-NPM, 2023 U.S. Dist. LEXIS 25888, at *3, *6-7 (M.D. Fla. Feb. 15, 2023). *A.D. v. Holistic Health Healing Inc.* involved a force, fraud, or coercion theory and a single reference to staff "encounters" with "no supporting facts as to how, how often, or when." No. 2:22-cv-641-JES-NPM, Doc. 32 at 4–5, 7–8 (M.D. Fla. Feb. 27, 2023). The SAC alleges how, how often (daily), and when (through 2015). (SAC ¶¶ 26, 30–31, 67, 73, 92.)

MMH also argues that D.W. fails to identify "any employee or staff member of any Defendant, any 'sex buyer,' any payment, any date, or any room (or even area of the Hotel)," so that the SAC is no more than "a formulaic recitation of the elements." Doc. 72 at 9. That argument confuses specificity with plausibility. *Twombly* rejects "a formulaic recitation of the elements of a cause of action," 550 U.S. at 555, but the same opinion disclaims any requirement of "heightened fact pleading of specifics." *Id.* at 570. The SAC does not recite elements. It identifies the hotel by name and address and the period of the trafficking. (SAC ¶¶ 8, 11, 26–27.) It identifies the MMH staff involved by function: the front desk, housekeeping, maintenance, and management employees who "interacted directly with Plaintiff, her traffickers, and her sex buyers." (*Id.* ¶ 91.) And it describes what those employees did. They checked an obviously underage girl in without identification, renewed the traffickers' room daily for cash at inflated rates charged for anonymity, and took compensation from buyers to act as lookouts. (*Id.* ¶¶ 29–31, 67, 73, 92(b)–(d).)

Courts in this District have rejected the same demand for names and dates in hotel trafficking cases. In *C.S. v. Wyndham Hotels & Resorts, Inc.*, the hotel operators argued that they could not defend without allegations specifying "which employee(s)" were involved and "when they were employed at the hotel." 538 F. Supp. 3d 1284, 1306-1307 (M.D. Fla. 2021). The court disagreed, holding that a complaint alleging the general dates of the trafficking and how the hotel employees' actions resulted in it "does not require greater specificity to avoid dismissal." *Id.* Likewise, in *S.Y. v. Choice Hotels International, Inc.*, the court held "that specific employees are not required to be named," and it rejected the argument that a failure to allege specific dates rendered the claims implausible. No. 2:20-cv-118-JES-MRM, 2021 U.S. Dist. LEXIS 81685, at * 41 n.11, 47 (M.D. Fla. Apr. 29, 2021) (quoting *Watts v. City of Port St. Lucie*, 2016 WL 633716, at *3 (M.D. Fla. Feb. 17, 2016)). Those holdings apply with greater force here. D.W. was a child when MMH's staff checked her in. The names of the clerks on duty, the room numbers, the payment records, and the dates of each daily renewal sit in MMH's own registration and payment records, not in the memory of a trafficked minor. *Northbrook* recognized as much, observing that in minor victim beneficiary cases the evidence "rarely is" overwhelming. 171 F.4th at 1271–72.

In short, the SAC alleges far more than an arm's-length rental. MMH admitted an obviously underage girl without identification. It renewed the traffickers' room every day, often for cash, without identification or registration information. And its employees took compensation as lookouts against police. (SAC ¶¶ 30–31, 67, 73, 91, 92(b)–(c), 93.) Each of those allegations describes the "something more" that

*Northbrook* requires. Taken together, they describe a hotel operator that took part in the venture, not one that merely observed it. *See Red Roof*, 21 F.4th at 727. The SAC therefore plausibly alleges that MMH participated in a venture under § 1595(a).

***2. MMH knew or should have known that the venture violated the TVPRA.***

MMH argues that the SAC relies on general industry awareness and generic "red flags" rather than facts showing that MMH knew of D.W.'s trafficking. (Doc. 72 at 9–10.) That misdescribes both the law and the SAC. Constructive knowledge that the venture violated the TVPRA is enough, the knowledge of MMH's employees is attributable to MMH, and the SAC alleges what those employees saw of D.W. herself.

Constructive knowledge is "that knowledge which 'one using reasonable care or diligence should have.'" *Red Roof*, 21 F.4th at 725. *Northbrook* holds that *Red Roof*'s reference to knowledge of a violation "as to the plaintiff" was "non-binding dicta," and that § 1595's knowledge element "requires constructive or actual knowledge that the undertaking or enterprise violated the TVPRA, nothing more." 171 F.4th at 1270. It also holds that, under the common law of agency, an employee's knowledge that is material to her duties may be imputed to the hotel operator that employs her. *Id.* at 1274 (citing Restatement (Third) of Agency §§ 5.03, 7.07(3)(a)).

The SAC readily meets that standard. Because D.W. was a minor, the TVPRA violation did not depend on force, fraud, or coercion; it was enough that she "ha[d] not attained the age of 18 years and [was] caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). MMH's front desk staff checked her in without identification

although her minority was obvious. (SAC ¶¶ 30–31.) MMH's staff saw "a frequent procession of sex buyers going in and out" and housekeeping found condoms and drug paraphernalia in the room. (*Id.* ¶¶ 32–34, 79, 93.) Those employees were MMH's, and their knowledge is MMH's. (*Id.* ¶¶ 90–91, 93.) In *Northbrook*, evidence that an operator "would have noticed five different men … visiting a fifteen-year-old girl" "[i]f [it] had paid attention" required the constructive-knowledge question "to go to a jury." 171 F.4th at 1273. The SAC alleges more: that MMH's staff saw these things.

MMH's authorities do not hold otherwise. *Holistic Health* turned on whether the operator should have known that the plaintiff "was being forced or coerced to commit commercial sex acts against her will," Doc. 32 at 4–5, a showing the TVPRA does not require for a minor. And out-of-circuit *S.J. v. Choice Hotels International, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020), addressed only "a general sex trafficking problem in low budget lodgings." And MMH's objection that ¶ 35 is pleaded on information and belief (Doc. 72 at 10) is beside the point; *Mann v. Palmer* declined to credit only a conclusory allegation made "without enough facts to make that statement plausible." 713 F.3d 1306, 1315 (11th Cir. 2013).

The SAC therefore does not rest on industry awareness or generic red flags. It alleges that MMH's own front desk staff checked in an obviously underage girl without identification. It alleges that MMH's staff watched a procession of sex buyers go in and out of her room, and that housekeeping found condoms and drug paraphernalia inside. What those employees saw, MMH knew. And because D.W. was a minor, those observations were enough to tell any operator using reasonable care that the

venture was violating the TVPRA. If the evidence in *Northbrook* was enough to send constructive knowledge to a jury, allegations that MMH's staff actually saw the signs are more than enough to survive a motion to dismiss. The SAC plausibly alleges that MMH knew or should have known that the venture violated the TVPRA.

### C. Count II States a Claim Under 18 U.S.C. § 2255.

MMH argues that Count II fails because § 2255 requires that the defendant itself have knowingly violated § 1591, and because the SAC pleads MMH's liability as a beneficiary that "did not violate § 1591." (Doc. 72 at 10–12 (quoting SAC ¶ 60).) MMH reads into § 2255 a limitation its text does not contain, and it misreads the Eleventh Circuit decision on which it relies.

Section 2255(a) provides that "[a]ny person who, while a minor, was a victim of a violation of section … 1591 … and who suffers personal injury as a result of such violation … may sue in any appropriate United States District Court." 18 U.S.C. § 2255(a). The statute defines who may sue (a minor victim of a predicate violation who was injured as a result) and says nothing to limit whom she may sue. D.W. pleads both conditions. (SAC ¶¶ 26–28, 94, 96–97.) A defendant that would confine § 2255 to perpetrators "effectively asks th[e] Court to re-write the statute by inserting (after 'may sue') the words 'the offender' or 'the perpetrator.'" *Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012). "Had Congress intended to limit liability in this respect, it could have done so by including such qualifying language in the statute," as it did in § 1595(a). *Id.* And "while § 2255 requires that the victim sustain an injury 'as a result' of a predicate criminal violation, that causation

requirement does not mean that only the criminal offender may be held liable." *Id.* at 1343.[3] The Northern District of Alabama agrees: "Nothing in § 2255 limits claims under the statue [sic] to only perpetrators." *Bates v. Sequel Youth & Fam. Servs., LLC*, No. 2:23-cv-01063-RDP, Doc. 63 at 10 (N.D. Ala. Oct. 14, 2025) (defendant sued as § 1595 beneficiary). In declining to certify that ruling for interlocutory appeal, the court explained that "[s]ection 2255(a) simply does not contain the limiting words 'against the perpetrator.'" *Id.*, Doc. 74 at 8 (N.D. Ala. Jan. 12, 2026).

MMH's reliance on *M.H. ex rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024) is misplaced. The plaintiffs there alleged that the website itself violated a § 2255 predicate by knowingly possessing child pornography, and the court held only that their complaint did not plausibly allege that knowing possession. *Id.* at 1271–72. The court did not decide whether § 2255 reaches only perpetrators. The passage MMH cites, *id.* at 1276, concerns a different statute: the exception to § 230 immunity for claims that applies when "the conduct underlying the claim constitutes a violation of section 1591." *Id.* at 1273 (quoting 47 U.S.C. § 230(e)(5)(A)).[4] Section 2255 contains no such language; it asks whether the plaintiff "was a victim of a violation of" § 1591. 18 U.S.C. § 2255(a).

---

[3] *Royal Caribbean* also relied on the presumption that Congress incorporated maritime principles of vicarious liability, 860 F. Supp. 2d at 1339–40, but its textual analysis does not depend on that presumption.

[4] Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) provides an immunity exclusively to websites. The Allow States and Victims to Fight Online Sex Trafficking Act of 2018 ("FOSTA"), 47 U.S.C. § 230(e)(5)(A), provides an exception to that immunity where plaintiffs may bring suit against websites.

For the same reason, SAC ¶ 60 concedes nothing. That paragraph describes the theory of Count I under § 1595(a). Because § 2255 does not require that the defendant have violated § 1591, a minor victim may pursue both remedies against a defendant sued as a beneficiary. *See Bates*, Doc. 63 at 10.[5]

**D. Count III Is Not Time-Barred on the Face of the SAC.**

MMH argues that Count III is time-barred because Florida's four-year negligence statute, even with the maximum tolling available to a minor, expired no later than December 31, 2022. (Doc. 72 at 12.) MMH applies the wrong statute. Florida law allows an action related to the sexual battery of a child under sixteen to be brought at any time, and nothing on the face of the SAC shows that D.W. was sixteen or older throughout the trafficking at MMH's hotel.

MMH's calculation rests on § 95.11(3)(a) and the seven year cap on minority tolling in § 95.051(1)(i), but it overlooks a more specific provision. At all relevant times, Florida law has provided that "[a]n action related to an act constituting a violation of s. 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time," unless the action was time-barred on or before July 1, 2010. § 95.11(9), Fla. Stat. (2017) (now § 95.11(10), Fla. Stat. (2025)). Section 794.011 defines sexual battery, and "consent" under that statute "does not include coerced submission." Fla. Stat. § 794.011(1).

[5] Plaintiff acknowledges that one court in this Circuit has held that § 2255 reaches only defendants who committed a predicate offense, relying in part on a complaint paragraph similar to SAC ¶ 60. *M.W. v. Radheshvar, LLC*, No. 1:25-cv-04747-SDG, Doc. 73 at 20–21 & n.36 (N.D. Ga. Sept. 21, 2026). That non-binding decision cannot be squared with the text of § 2255(a) or with *Royal Caribbean* and *Bates*.

This provision reaches negligence claims against entities that did not themselves commit the battery. In *D.L. v. Community Based Care of Brevard, Inc.*, the Fifth District reversed the dismissal, on four-year limitations grounds, of negligence claims against institutions whose "individual and collective negligence … allowed and even facilitated her sexual abuse," holding that "this connection between the claimed negligence of Appellees and the alleged sexual abuse suffices for purposes of section 95.11(9) such that D.L.'s claims can be brought at any time." No. 5D2024-2975, slip op. at 8 (Fla. 5th DCA Feb. 13, 2026). *See also W.D. v. Archdiocese of Miami, Inc.*, 197 So. 3d 584, 589 (Fla. 4th DCA 2016) ("The language is broad enough to include a cause of action against a non-perpetrator if it is related to a sexual battery."). This Court follows those decisions "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1339 (11th Cir. 2019) (quoting *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001)).[6] MMH's own authority, *R.R. v. New Life Community Church of CMA, Inc.*, 303 So. 3d 916 (Fla. 2020), addressed when a minor's negligence claim accrues and expressly did "not address" whether such claims "were timely under section 95.11(7) or 95.11(9)." *Id.* at 919 n.1.

---

[6]In *Doe 1 v. Archdiocese of Miami, Inc.*, 360 So. 3d 778 (Fla. 3d DCA 2023), the negligence claim was barred because it had expired before July 1, 2010; nothing in the SAC suggests D.W.'s claim had expired by that date. *S.S. v. School Board of Sarasota County*, No. 2D21-2325 (Fla. 2d DCA Mar. 17, 2023), assumed § 95.11(9) applied but held that the four-year limitations period for actions against the State and its subdivisions in § 768.28(14) controlled as to a sovereign defendant. MMH is not a sovereign.

Count III is "related to" sexual batteries of D.W.: she was a child "forced to perform sexual acts on numerous adult individuals" at MMH's hotel, and her negligence claim alleges that MMH's failures allowed that abuse to continue. (SAC ¶¶ 27–28, 82, 99–101.) Nothing on the face of the SAC shows that she was sixteen or older when every act occurred. The SAC alleges only that she was born in 1999 and was trafficked "through and inclusive of 2015." (*Id.* ¶¶ 8, 26.) A child born in 1999 did not turn sixteen until some date in 2015, so any trafficking before that date occurred while she was fifteen or younger. Nor does anything suggest the claim was "time barred on or before July 1, 2010." Limitations is an affirmative defense that a plaintiff is "not required to negate … in [her] complaint." *La Grasta*, 358 F.3d at 845 (cleaned up). MMH's tolling arithmetic, and its observation that MMH was served in 2026 (Doc. 72 at 12), are irrelevant: § 95.051 tolls a running limitations period, and § 95.11(9) supplies none.

**E. Count III States a Negligence Claim Under Florida Law.**

MMH argues that Count III fails on the merits because it combines three theories in one count, because Florida law imposes no duty absent prior similar incidents, and because the causation allegations are conclusory. (Doc. 72 at 12–13.) Florida law does not require prior similar incidents; the SAC pleads a duty grounded in what MMH's own staff observed and plausible causation, ordinarily both questions for a jury; and Count III pleads one negligence claim with alleged degrees of culpability, as Rule 8(d)(2) permits.

A motel operator "is under a continuing legal duty to its patrons to use ordinary care to keep the premises in a reasonably safe condition and protect them from harm due to reasonably foreseeable risks of injury." *Hardy v. Pier 99 Motor Inn*, 664 So. 2d 1095, 1097 (Fla. 1st DCA 1995). MMH quotes *Hardy* for the proposition that a hotel is not an insurer of its guests' safety (Doc. 72 at 13), but *Hardy* reversed summary judgment *for the motel*. It held that "[t]he question of foreseeability in a negligence action is generally a question for the trier of fact," and it faulted the trial court for "requiring proof that the hotel had knowledge of prior *similar violent* criminal acts on the premises." 664 So. 2d at 1097–98 (emphasis omitted). Under Florida Supreme Court precedent, foreseeability "can be shown by proving that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron." *Stevens v. Jefferson*, 436 So. 2d 33, 34–35 (Fla. 1983) (citing Restatement (Second) of Torts § 344 cmt. f (1965)). *See also McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502–03 (Fla. 1992) (duty exists where the defendant's conduct creates a "foreseeable zone of risk") (emphasis omitted). The SAC's Restatement theories (SAC ¶ 100(i)) track these Florida duties; *Stevens* itself relied on § 344. *Banosmoreno v. Walgreen Co.*, a summary-judgment decision, expressly declined to decide whether prior similar incidents are required. 299 F. App'x 912, 913 n.1 (11th Cir. 2008).

The SAC alleges far more than a generalized risk. D.W. was a guest of MMH's hotel, checked in by its staff. (SAC ¶¶ 29–30.) MMH's employees saw the indicators, described above, that a child was being trafficked in its rooms. A danger that the

operator's own staff observe is a "dangerous condition" the operator "knew or should have known" of. *Stevens*, 436 So. 2d at 34.

"[T]he question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve," and "it is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred." *McCain*, 593 So. 2d at 503–04 (emphasis omitted). MMH could have refused to rent to the traffickers or ejected them, but kept renting to them. (SAC ¶¶ 73, 81, 83, 92(b), 93.) It is plausible that refusing to rent to a child's traffickers, or reporting what MMH's staff saw (*id.* ¶¶ 40, 50, 100), would have interrupted her trafficking at the hotel. (*Id.* ¶¶ 82, 93.) *See S.Y.*, 2021 U.S. Dist. LEXIS 86849, at *36-38.

## V. CONCLUSION

Plaintiff D.W. respectfully requests that the Court deny MMH's Motion in its entirety. If the Court finds any pleading deficiency, Plaintiff respectfully requests that dismissal be without prejudice and that she be given leave to amend.

Dated: November 4, 2026

Respectfully submitted,

/s/ Ashley Ventrillo
Ashley Ventrillo, Esq.
Florida Bar No. 1065524
Nathaniel L. Foote, Esq. (Pro Hac Vice)
ANDREOZZI + FOOTE
4503 North Front Street
Harrisburg, PA 17110
(t) (717) 525-9124 | (f) (717) 525-9143
teamd@vca.law

*Attorneys for Plaintiff D.W.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 4, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Ashley Ventrillo*